1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Frederick A. Lorig (Bar No. 057645)
2  fredlorig@quinnemanuel.com
   Christopher A. Mathews (Bar No. 144021)
3  chrismathews@quinnemanuel.com
   Diane C. Hutnyan (Bar No. 190081)
4  dianehutnyan@quinnemanuel.com
   Bruce R. Zisser (Bar No. 180607)
5  brucezisser@quinnemanuel.com
   Sidford Lewis Brown (Bar No. 107196)
6  sidfordbrown@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
7  Los Angeles, California  90017-2543
   Telephone:     (213) 443-3000
8  Facsimile:     (213) 443-3100

9  Attorneys for Plaintiff
   MULTIMEDIA PATENT TRUST
10

11                         UNITED STATES DISTRICT COURT
12                       SOUTHERN DISTRICT OF CALIFORNIA
13

14 MULTIMEDIA PATENT TRUST, a Delaware    CASE NO.  '12CV2135 JAH  JMA
   statutory trust,
15
            Plaintiff,
16                                         COMPLAINT FOR PATENT
       v.                                  INFRINGEMENT
17
   APPLE INC., a California corporation,   DEMAND FOR JURY TRIAL
18
            Defendant.
19

20

21

22

23

24

25

26

27

28

03718.22442/4824070.2

COMPLAINT FOR PATENT INFRINGEMENT

## COMPLAINT

Plaintiff Multimedia Patent Trust ("MPT") for its complaint against Defendant Apple Inc. ("Apple") hereby demands a jury trial and alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

2. Venue is established in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).

### Nature of the Action

3. This is a civil action for infringement of United States Patent No. 5,500,678 (the "Patent-in-Suit"). This action is based upon the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

### Parties

4. Plaintiff Multimedia Patent Trust is a Delaware statutory trust under the Delaware Statutory Trust Act, 12 Del. Code title 12 §§ 3801, et seq.

5. On information and belief, Defendant Apple is incorporated under the laws of the state of California, having its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple products accused of infringement in this Complaint are, and have been, offered for sale and sold in this and other judicial districts for a period not yet known but continuing to this date. Further, on information and belief, Apple operates one or more retail establishments in this judicial district through which it sells the accused Apple products.

### Background Facts and the Patent-in-Suit

6. The Patent-in-Suit is generally directed to a system and method of encoding signals representative of moving images (*i.e.*, "video compression").

7. Video compression techniques are used in many industries that involve either the transmission of video from one location to another and/or the manufacture and sale of devices to receive or store video signals. These industries include, for example: content providers; cable and

satellite companies; teleconferencing providers; television, electronics and cellular telephone manufacturers; television broadcasters and digital media providers.

8. Video compression reduces the amount of digital data needed to represent video so that it can be sent more efficiently over communications media, such as the Internet and satellites, or stored more efficiently on storage media such as DVDs and Blu-Ray disks. Video consists of a series of pictures, or frames, with each frame capturing a scene at an instant of time. When viewed consecutively, the frames form video sequences. Video compression involves reducing the amount of digital data needed to represent information about the content of these pictures or frames while allowing a video to ultimately be reproduced from that information.

9. There are numerous benefits to video compression. For instance, it enables large amounts of video data to be stored on smaller memory devices and permits broadcasters to transmit greater numbers of programs using the same bandwidth over a particular transmission medium. For example, without video compression it would be impossible to store a feature-length film on a single DVD. Also, video retrieval via the Internet would not be feasible due to the huge volume of uncompressed data that would need to be transmitted. The challenge that comes with video compression, however, is assuring that the video image ultimately reproduced from the reduced amount of digital data is of sufficient quality.

10. A video signal is encoded (compressed) prior to being transmitted over a medium or before it is stored on a medium. When the video signal is read off the storage medium or is received at the other end, it is decoded (decompressed) to recreate either the original signal or, in the case of a lossy compression technique (by which certain unnecessary bits of data are eliminated), a close approximation of the original signal. When encoding a video, the video signal is processed using a variety of techniques that reduce the amount of data, such as transformation, quantization, motion-compensated prediction and variable length encoding.

11. Lucent, and its predecessor AT&T, Inc., through their research arm Bell Labs, have a long history of research and development in the area of video compression. The Patent-in-Suit claims an apparatus and method, developed at Bell Labs, for the encoding of video data which are used in software and devices supporting various international standards, including MPEG-4, Part

2, H.263 and MPEG-4, Part 10 (H.264) video coding.  Lucent transferred, assigned, conveyed, delivered and vested to MPT all of Lucent's interests and rights in the Patent-in-Suit in all countries and jurisdictions, along with the right to sue for past infringement (including all current and future claims and causes of action).

12. On March 19, 1996, the USPTO issued U.S. Patent No. 5,500,678 ("the '678 Patent") to Atul Puri for his invention entitled "Optimized Scanning of Transform Coefficients in Video Coding."  MPT is now sole owner of the '678 patent.  On May 29, 2007, the USPTO issued a Certificate of Correction for the '678 patent.  A copy of the '678 Patent and its Certificate of Correction are attached hereto as Exhibit A.

## COUNT I

### (Patent Infringement Against Apple Mobile Devices)

13. Paragraphs 1 through 12 are incorporated by reference as if stated fully herein.

14. Apple continues to make, have made, use, sell, and offer for sale in the United States, and import into the United States, mobile devices which are capable of encoding and decoding digital video.

15. These Apple products can encode and decode video in compliance with a variety of standards promulgated by the International Organization for Standardization (ISO) and the International Telecommunications Union (ITU), including H.264.  The ability to encode video images in these formats is found in Apple's mobile devices, including the iPhone 4s, iPad 2 and the "new" iPad.

16. Apple's products, including but not limited to the iPhone 4S, iPad 2 and the "new iPad" by virtue of the manner in which they encode video, infringe one or more claims of the '678 patent.

17. Apple, therefore, by making, having made, offering for sale, selling and/or importing its video-capable mobile products, has been and still is directly infringing, contributorily infringing, and/or inducing others to infringe the '678 patent.  Apple will continue to infringe unless enjoined by this court.

18. As a result of Apple's infringement of the '678 patent, MPT is entitled to a reasonable royalty on all video-capable mobile products sold by Apple that embody an apparatus or method claimed by that patent.

19. Apple's infringement of the '678 patent has caused and will continue to cause MPT and its existing licensees substantial and irreparable injury for which MPT is entitled to receive injunctive relief and damages adequate to compensate it for such infringement.

20. Apple has had actual knowledge of the claims of the '678 patent since no later than March 15, 2007 when MPT notified Apple of its infringement of the '678 patent. Despite such knowledge, Apple has refused to take a license and continues to infringe the '678 patent willfully and deliberately in disregard of MPT's patent rights.

## COUNT II

### (Patent Infringement Against Apple Software Products)

21. Paragraphs 1 through 12 are incorporated by reference as if stated fully herein.

22. Apple continues to make, have made, use, sell, and offer for sale in the United States, and import into the United States, computer software which is capable of encoding and decoding digital video.

23. These Apple products can encode and decode video in compliance with a variety of standards promulgated by the International Organization for Standardization (ISO) and the International Telecommunications Union (ITU), including MPEG-4, Part 2, and H.264. The ability to encode video images in these formats is included in Apple software products, including Compressor 2.x, Compressor 3.x, Compressor 4.x, DVD Studio Pro 4.x, Final Cut Express 3.x, Final Cut Express 4.x, Final Cut Express HD, Final Cut Pro 5.x, Final Cut Pro 6.x, Final Cut Pro 7.x, Final Cut Pro X, Final Cut Server 1.x, iDVD '08, iDVD '09, iDVD '11, iDVD 5, iDVD 6, iDVD 7, iMovie '08, iMovie '09, iMovie '11, iMovie HD 5, iMovie HD 6, iLife '05, iLife '06, iLife '08, iLife '09, iLife '11, QuickTime Player X, Quicktime 7 Pro.

24. Apple's products, including but not limited to Compressor 2.x, Compressor 3.x, Compressor 4.x, DVD Studio Pro 4.x, Final Cut Express 3.x, Final Cut Express 4.x, Final Cut Express HD, Final Cut Pro 5.x, Final Cut Pro 6.x, Final Cut Pro 7.x, Final Cut Pro X, Final Cut

1  Server 1.x, iDVD '08, iDVD '09, iDVD '11, iDVD 5, iDVD 6, iDVD 7, iMovie '08, iMovie '09,
2  iMovie '11, iMovie HD 5, iMovie HD 6, iLife '05, iLife '06, iLife '08, iLife '09, iLife '11,
3  QuickTime Player X, Quicktime 7 Pro, by virtue of the manner in which they encode video,
4  infringe one or more claims of the '678 patent.

5      25. Apple, therefore, by making, having made, offering for sale, selling and/or
6  importing its video-capable software products, has been and still is directly infringing,
7  contributorily infringing, and/or inducing others to infringe the '678 patent. Apple will continue to
8  infringe unless enjoined by this court.

9      26. As a result of Apple's infringement of the '678 patent, MPT is entitled to a
10 reasonable royalty on all video-capable software products sold by Apple that embody an apparatus
11 or method claimed by that patent.

12     27. Apple's infringement of the '678 patent has caused and will continue to cause MPT
13 and its existing licensees substantial and irreparable injury for which MPT is entitled to receive
14 injunctive relief and damages adequate to compensate it for such infringement.

15     28. Apple has had actual knowledge of the claims of the '678 patent since no later than
16 March 15, 2007 when MPT notified Apple of its infringement of the '678 patent. Despite such
17 knowledge, Apple has refused to take a license and continues to infringe the '678 patent willfully
18 and deliberately in disregard of MPT's patent rights.

19 <center>**COUNT III**</center>
20 <center>**(Patent Infringement Against Apple Computer Products)**</center>

21     29. Paragraphs 1 through 12 are incorporated by reference as if stated fully herein.

22     30. Apple continues to make, have made, use, sell, and offer for sale in the United
23 States, and import into the United States, desktop and laptop computers that are capable of
24 encoding and decoding digital video.

25     31. These Apple products can encode video in compliance with a variety of standards
26 promulgated by the International Organization for Standardization (ISO) and the International
27 Telecommunications Union (ITU), including MPEG-4, Part 2, and H.264. The ability to encode
28

video images in these formats are included in Apple's desktop and laptop computers, including its MacBook, MacBook Pro, MacBook Air, iMac, Mac Mini, and Mac Pro lines of computers.

32.  Apple's products, including but not limited to the MacBook, MacBook Pro, MacBook Air, iMac, Mac Mini, and Mac Pro, by virtue of the manner in which they encode video, infringe one or more claims of the '678 patent.

33.  Apple, therefore, by making, having made, offering for sale, selling and/or importing its video-capable computer products, has been and still is directly infringing, contributorily infringing, and/or inducing others to infringe the '678 patent. Apple will continue to infringe unless enjoined by this court.

34.  As a result of Apple's infringement of the '678 patent, MPT is entitled to a reasonable royalty on all video-capable computer products sold by Apple that embody an apparatus or method claimed by that patent.

35.  Apple's infringement of the '678 patent has caused and will continue to cause MPT and its existing licensees substantial and irreparable injury for which MPT is entitled to receive injunctive relief and damages adequate to compensate it for such infringement.

36.  Apple has had actual knowledge of the claims of the '678 patent since no later than March 15, 2007 when MPT notified Apple of its infringement of the '678 patent. Despite such knowledge, Apple has refused to take a license and continues to infringe the '678 patent willfully and deliberately in disregard of MPT's patent rights.

## PRAYER FOR RELIEF

WHEREFORE, Multimedia Patent Trust respectfully requests the following relief:

A.  A judgment holding Apple liable for infringement of the '678 patent asserted against it;

B.  A permanent injunction pursuant to 35 U.S.C. § 283 against Apple, its officers, agents, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all others acting in concert or participation with it, enjoining them from continued acts of infringement of the '678 asserted against it;

C. An accounting of damages resulting from Apple's infringement of the '678 patent asserted against it, together with pre-judgment and post-judgment interest;

D. A judgment holding that Apple's infringement is willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

E. A judgment holding this Action to be an exceptional case, and an award to Plaintiff Multimedia Patent Trust for its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

F. Such other and further relief as this Court deems just and proper.

DATED: August 29, 2012        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _*s/Bruce R. Zisser*_
Bruce R. Zisser
Attorneys for Plaintiff
MULTIMEDIA PATENT TRUST

<u>JURY TRIAL DEMANDED</u>

Multimedia Patent Trust demands a trial by jury on all issues triable of right by a jury.

DATED: August 29, 2012           QUINN EMANUEL URQUHART &
                                 SULLIVAN, LLP


                                 By:   *s/Bruce R. Zisser*
                                       Bruce R. Zisser
                                       Attorneys for Plaintiff
                                       MULTIMEDIA PATENT TRUST

03718.22442/4824070.2

-9-

COMPLAINT FOR PATENT INFRINGEMENT